498 S.E.2d 888

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Appellant,**

**In Re Linda Ratteree, Plaintiff,**

**v.**

**Gerald HAMLETT, Respondent.**

**No. 2807.**

Court of Appeals of South Carolina.

Heard Jan. 6, 1998.

Decided Feb. 24, 1998.

Rehearing Denied April 23, 1998.

Holly C. Walker, Columbia, for appellant.

Donna E. Elder, Gaffney; and William G. Rhoden, of Winter & Rhoden, Gaffney, for respondent.

PER CURIAM.

The South Carolina Department of Social Services (SCDSS) appeals the order of the family court finding Gerald Hamlett had no child support payment arrearage under a South Carolina order. We reverse and remand.

## I. FACTS

In 1984, Linda Ratteree and Hamlett obtained a divorce in South Carolina. The divorce decree provided, among other things, that Hamlett was to pay $450 per month to Ratteree as child support for their two minor children. In 1987, Ratteree assigned her child support rights to SCDSS.

In 1989, Hamlett instituted an action for reduction of his child support obligation. This request was denied. In 1990, Hamlett again requested a reduction of his child support obligation. This request was also denied.

Subsequently, Hamlett became a resident of North Carolina. By order of a North Carolina court dated November

26, 1990, the South Carolina support order was registered in North Carolina.

Hamlett then brought an action in North Carolina for reduction of his child support obligation. In January 1991, the North Carolina court granted Hamlett's request and reduced his support obligation to $70 per week. The North Carolina court also found Hamlett had accumulated arrearage of $695 since the order's registration in North Carolina. However, the court found he was entitled to an adjustment of the arrearage amount "to reflect his ability to pay support since the registration of this Order with the courts of North Carolina." Accordingly, the North Carolina court established an arrearage amount of $285 and ordered him to pay an additional $5 per week to be applied to the arrearage until it was paid in full.

In April 1991, Hamlett obtained another reduction of his child support obligation by a North Carolina court. His payments were reduced to $40 per week with an additional $5 per week to be applied to an arrearage of $415.

In September 1996, the North Carolina Department of Social Services closed Hamlett's case on the basis that he had paid all arrearage under the North Carolina order in full and the youngest child had reached the age of majority.

In November 1996, the South Carolina family court ordered Hamlett's wages withheld in the amount of $450 per month for ongoing child support plus $90 per month to be applied towards an unspecified arrearage. Hamlett filed an action to stop the garnishment, alleging he had paid his entire child support obligation and both children were past the age of majority. He specifically alleged he had no outstanding arrearage at the time of the 1996 order.

At a hearing on Hamlett's action, SCDSS admitted Hamlett's support obligation should have ceased in September 1996 when the youngest child reached the age of majority, but alleged he owed at least $12,000 in arrearage. SCDSS contended that the original South Carolina support order continued to be effective even after it was registered in North Carolina. SCDSS argued that Hamlett was entitled to a credit for the reduced payments he made pursuant to the North Carolina order, but still owed the balance of what would have been due under the original South Carolina order.

■ The family court concluded that North Carolina effectively modified the original South Carolina order of child support under the Uniform Reciprocal Enforcement of Support Act (URESA), S.C.Code Ann. §§ 20–7–960 to 1170 (1985). The court reasoned that since Hamlett satisfied the arrearage under the modified North Carolina order, his obligation under the original South Carolina order was extinguished.

## II. ISSUE

Did the family court err in finding that the North Carolina order modified the original South Carolina order so that Hamlett's satisfaction of the support and arrearage obligations under the North Carolina order extinguished any obligation under the original South Carolina order?

## III. DISCUSSION

■ SCDSS contends the family court erred in finding Hamlett was not responsible for child support arrearage under the original South Carolina order. SCDSS argues that registration of the South Carolina order in North Carolina did not nullify the South Carolina order. SCDSS alleges Hamlett's support obligation continued under the South Carolina order as originally entered and he is entitled only to a credit for the amount he paid under the reduced North Carolina orders. We agree.

The parties agree that the applicable law governing this case is URESA, S.C. Code Ann. §§ 20–7–960 to 1170 (1985).[1] The parties also agree that the only arrearage at issue is this case is that which accrued under the original South Carolina order since its registration in North Carolina on November 26, 1990.

URESA is a legislative scheme designed "to improve and extend by reciprocal legislation the enforcement of duties of

---

1. URESA was replaced in 1994 by the Uniform Interstate Family Support Act, S.C.Code Ann. §§ 20–7–960 to 20–7–1166 (Supp.1997). However, URESA remains controlling "for the purpose of sustaining any pending or vested right, civil action, special proceeding, criminal prosecution, or appeal existing as of [July 1, 1994] and for the enforcement of rights, duties, penalties, forfeitures, and liabilities as they stood

support." S.C.Code Ann. § 20–7–965 (1985). This scheme anticipates multiple orders of support involving the same parties.

> A support order made by a court of this State pursuant to [URESA] does not nullify and is not nullified by a support order made by a court of this State pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state must be credited against the amounts accruing or accrued for the same period under any support order made by the court of this State.

S.C.Code Ann. § 20–7–1110 (1985). Section 20–7–1110 clearly provides that a support order made by a court of this State is not nullified by a support order made by a court of another state unless specifically provided by the court. In this case, neither of the North Carolina orders specifically nullified the original South Carolina order. Section 20–7–1110 permits the existence of multiple support orders while requiring an obligor's payments be credited against amounts accruing under other orders.

■ Hamlett contends that once the South Carolina support order was registered in North Carolina, it became, in effect, a North Carolina order subject to modification by the North Carolina court. In support of his argument he cites S.C.Code Ann. § 20–7–1155(a) (1985) which reads:

> Upon registration the registered foreign support order must be treated in the same manner as a support order issued by a court of this State. It has the same effect and is subject to the same procedures, defenses, and proceedings for modifying, vacating, or staying as a support order of this State and may be enforced and satisfied in like manner.

This Court, in *Deltoro v. McMullen*, 322 S.C. 328, 471 S.E.2d 742 (Ct.App.1996), held that a South Carolina family court has jurisdiction under URESA, specifically section 20–7–1155, to modify the provisions of a foreign support order which has been properly registered in this State. However, neither

---

under [URESA]." Act No. 494, § 3, 1994 S.C. Acts 5102 at 5123; *Deltoro v. McMullen*, 322 S.C. 328, 471 S.E.2d 742 (Ct.App.1996).

*Deltoro* nor the language of section 20–7–1155 address the issue of whether an original support order remains separate and enforceable after its registration and modification in a foreign state. Furthermore, section 20–7–1155 is inapplicable to this case because it only governs foreign support orders registered in this State.

■ We hold, under URESA, that a South Carolina support order continues as an independently enforceable order regardless of its registration and modification in a foreign state unless specifically nullified by the court pursuant to section 20–7–1110. However, "[a]mounts paid for a particular period pursuant to any support order made by the court of another state must be credited against the amounts accruing or accrued for the same period under any support order made by the court of this State." § 20–7–1110.

Therefore, the family court erred in concluding that Hamlett had not accrued any support arrearage under the South Carolina order.

## IV. CONCLUSION

For the foregoing reasons, this case is reversed and remanded to the family court for a determination of Hamlett's accrued arrearage under the South Carolina order.

**REVERSED and REMANDED.**

CURETON, GOOLSBY and HOWARD, JJ., concur.