IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-694

Filed 06 June 2023

Henderson County, No. 20 JT 172

IN THE MATTER OF: A.R.B.

Appeal by Respondent-Father from Order filed 6 June 2022 by Judge Emily Cowan in Henderson County District Court.  Heard in the Court of Appeals 26 April 2023.

*Vitrano Law Offices, PLLC, by Sean P. Vitrano, for Respondent-Appellant Father.*

*Emily Sutton Dezio, for Petitioner-Appellee Mother.*

STADING, Judge.

Respondent-Father ("Father") appeals from the trial court's Amended Order terminating his parental rights to his child based on willful abandonment and neglect. Father argues (1) that the trial court abused its discretion in granting a Rule 60(a) motion to amend the Original Order terminating his parental rights and (2) in the alternative, that there is no clear, cogent, and convincing evidence to support the trial court's findings that Father willfully abandoned his child.  For the reasons set forth below, we vacate and remand the Order of the trial court with instructions consistent with this Opinion.

## I. Background

"Adam,"[1] born 23 April 2018, is the child of Petitioner-Mother, Miranda Burlseon ("Mother"), and Father, Brandon Ezequiel Johnson. At the time of Adam's birth, Mother was seventeen years old, and Father was nineteen years old. The parties were never married. Since his birth, Adam resided exclusively with Mother.

On 26 June 2018, Father initiated a custody action in Henderson County, requesting custody of Adam and child support. Mother counterclaimed for the same. In April 2019, the court awarded joint legal custody of Adam to both parties, with Adam living primarily with Mother, and Father receiving supervised visitation that would eventually progress to unsupervised visits. The court determined Father "had issues with [m]arijuana use" and ordered him to complete "a 12-panel hair follicle drug test by May 13, 2019 and to present the results of said test to [Mother]'s attorney of record."

In August 2018, when Adam was four months old, Mother began a relationship with Kemper Henderson. Throughout Adam's early years, Henderson was very involved in Adam's daily care. Mother and Henderson married on 10 October 2020 and moved to South Carolina with Adam.

In May 2019, Father attended three, two-hour-long, supervised visits with Adam at Mother's home. According to Mother, Father, and Henderson, the visits

---

[1] Adam is a pseudonym to protect the identity of the minor child. *See* N.C. R. App. P. 42.

went well, and all parties were cordial and friendly with one another. On May 17, 2019, Father delivered a box of diapers and wipes to Mother and visited with Adam. After this visit, Father ceased communication with Mother and failed to attend other scheduled visitations. On 3 June 2019, Mother filed a "Motion to Show Cause and a Motion to Modify Custody based upon [Father]'s failure to contact the minor child, nor to produce the court-ordered drug test results." The matter was noticed for hearing but was never heard and removed from the district court's calendar on 14 May 2020.

On 21 June 2019, Father contacted Mother, stating he completed his follicle drug test. Mother questioned his lack of contact and failure to attend visits. Father stated Mother's attorney contacted him and told him that he could not visit Adam until he completed his drug test. Mother claims her attorney did not contact Father. Father admits this was the last time he attempted to contact Mother and that he has not seen Adam since May 2019.

On 7 December 2020, Mother petitioned for termination of Father's parental rights. After he was served, Father filed a pro-se answer on 5 February 2021 and an additional answer through appointed counsel on 24 March 2021. The district court appointed a Guardian ad Litem ("GAL"), but the court dismissed the first GAL for failure to complete services, thereby delaying the hearing. The court appointed

Christopher Reed to be Adam's GAL. On 16 February 2022, with both parties present, the district court held a hearing on the petition.[2]

The court heard testimony from Father and Mother, as well as Andrea Straton, Adam's maternal grandmother, and Cindy Frickel, Father's family friend. The court also considered the GAL report, filed on 16 February 2022. The report detailed the GAL's interactions with Mother, Father, and Adam, noting that while Father loves Adam, Father "admits and recognizes that since he has not seen [Adam] since May 2019, he currently had no bond with his son, and his son would not recognize him as his father." The GAL's report concluded that it was in Adam's best interest that Father's parental rights be terminated to allow for Adam's adoption by Henderson. Ultimately, the court found that Father had abandoned and neglected Adam, and it was in Adam's best interest that Father's parental rights be terminated. The court entered the order terminating Father's rights on 25 February 2022 and Father entered a notice of appeal on 28 February 2022.

On 27 May 2022, Mother filed a Rule 60(a) motion, requesting "the court to amend the February 25, 2022 Order terminating the parental rights to clearly state the standard of review for which she made her findings of fact relating to the grounds to terminate." On 9 June 2022, the court held a hearing and determined that the

---

[2] A record of this proceeding, and another held on 9 June 2022, was made with an electronic recording device that subsequently malfunctioned. The assigned transcriptionist was unable to prepare a verbatim transcript, so the parties stipulated to the inclusion of summaries of the proceedings in narrative form. *See* N.C. R. App. P. 9(c)(1).

language of the Order could be "made clearer to ensure that the standard of review used by the court applies not only to the best interests but also that there were grounds to terminate [Father]'s parental rights." Father's counsel objected to the change, but ultimately, the court entered an Amended Order terminating Father's parental rights. Father timely filed a notice of appeal from the Amended Order and Order granting the Rule 60(a) motion.

## II. Jurisdiction

This Court has jurisdiction over Father's appeal from the Amended Order terminating his parental rights pursuant to N.C. Gen. Stat. §§ 7A-27(b)(2) and 7B-1001(a)(7) (2023).

## III. Analysis

Father presents two issues on appeal: (1) whether the trial court abused its discretion in granting the Rule 60(a) motion to make a substantive, rather than clerical, change to the Termination of Parent Rights ("TPR") Order; and (2) if this Court finds the trial court did not abuse its discretion, whether there is clear, cogent, and convincing evidence to support the trial court's determination that grounds existed to terminate Father's parental rights. We first examine whether the court properly granted the Rule 60(a) motion.

### A. Comparison of the Orders

We pay due deference to the principle that parents have fundamental, substantive rights under the United States Constitution that are embodied in North

Carolina General Statutes and reinforced by precedential case law. In *Santosky v. Kramer*, the United States Supreme Court held that "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982). The Juvenile Code in North Carolina "provides for a two-step process for the termination of parental rights—an adjudicatory stage and a dispositional stage." *In re K.N.*, 373 N.C. 274, 277-78, 837 S.E.2d 861, 864-865 (2020) (citing N.C. Gen. Stat. §§ 7B-1109, -1110 (2017)). During the first or adjudicatory stage, the petitioner bears the burden of proving by "*clear, cogent, and convincing evidence*" the existence of one or more grounds for termination pursuant to subsection 7B-1111(a) of the General Statutes of North Carolina. N.C. Gen. Stat. § 7B-1109(e), (f) (emphasis added). Next, if a trial court finds that a ground for termination exists, it proceeds to the second or dispositional stage, at which it must "determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a).

In the trial court's Original Order, the only recitation of a standard of proof was found in paragraph 26, in reference to the dispositional stage, which read: "[t]hat there is clear and convincing evidence that it is in the best interests of the minor child that the Father's parental rights be terminated." In considering Mother's 60(a) motion, the trial court recognized the deficiency in granting the Order and ultimately determined "it is best practice to grant this Motion and be clear upon the standard

used at the hearing to terminate Respondent's parental rights." The amended portion reads as follows:

> THAT FURTHER, that Petitioner[-Mother] has produced the following clear, convincing and cogent evidence to support termination of the parental rights and that it is in the child's best interest to do so;
>
> . . . .
>
> 24. Based on the foregoing, the Petitioner[-Mother] has established grounds for termination of the parental rights of the Respondent[-Father] by clear, cogent, and convincing evidence. That Respondent[-Father], as a natural parent of the juvenile, has willfully abandoned the juvenile for at least six (6) consecutive months immediately preceding the filing of this Petition for Termination of Parental Rights, pursuant to the provisions of N.C. Gen. Stat. § 7B-1111(a)(7).
>
> 25. Based upon the foregoing, the Petitioner[-Mother] has established grounds for termination of the parental rights of the Respondent[-Father] by clear, cogent, and convincing evidence. That Respondent[-Father], as a natural parent of the juvenile, has neglected, pursuant to the provisions of N.C. Gen. Stat. § 7B-1111(a)(1) by:
>
> > a. Abandoning the juvenile,
> >
> > b. Failing to provide the proper care, supervision or discipline for the juvenile, and
> >
> > c. Showing a lack of parental concern for the juvenile.
>
> 26. Based upon the totality of the evidence and by the clear, cogent and convincing standard of law, termination of the Respondent[-Father]'s parental rights is in the best interest and welfare of the juvenile.

A comparison of the two Orders reveals, inter alia, that the modifications were an intentional addition to include the constitutionally permissible standard of proof.

## B. Substantive Versus Clerical Changes

This Court reviews a trial court's decision to amend an order after a Rule 60(a) motion for abuse of discretion. *In re Estate of Meetze*, 272 N.C. App. 475, 479, 847 S.E.2d 220, 224 (2020). Rule 60(a) of North Carolina's Rules of Civil Procedure states:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge at any time on his own initiative or on the motion of any party and after such notice, if any, as the judge order. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate division, and thereafter while the appeal is pending may be so corrected with leave of the appellate division.

N.C.G.S. § 1A-1, Rule 60(a) (2022). "Clerical mistakes" are those that do not alter the court's reasoning or determination in ruling on an order. *In re J.K.P.*, 238 N.C. App. 334, 343, 767 S.E.2d 119, 124 (2014). "While Rule 60 allows the trial court to correct clerical mistakes in its order, it does not grant the trial court the authority to make substantive modifications to an entered judgment." *In re C.N.C.B.*, 197 N.C. App. 553, 556, 678 S.E.2d 240, 242 (2009) (citations omitted). Thus, a trial court abuses its discretion if the correction "alters the effect of the original order." *In re Meetze*, 272 N.C. App. at 479, 847 S.E.2d at 224. We are now tasked with determining whether the trial court's initial omission and subsequent addition of the correct

standard was a clerical mistake or a substantive modification constituting an abuse of discretion.

The existing body of case law contemplating whether a trial court is divested of jurisdiction pursuant to Rule 60(a) does not speak directly to the primary issue in this case. Available precedent considering whether a trial court exceeded the bounds of a clerical mistake and trod onto the territory of a substantive modification has considered alterations in findings of fact that change the result of an order. *See, e.g., In re B.B.*, 381 N.C. 343, 873 S.E.2d 589 (2022). Father cites several cases in support of his argument in which granting a Rule 60(a) motion to amend an order was found to be a substantive alteration. *In re B.L.H.*, 376 N.C. 118, 852 S.E.2d 91 (2020); *In re M.R.F.*, 378 N.C. 638, 862 S.E.2d 758 (2021); *Hinson v. Hinson*, 78 N.C. App. 613, 337 S.E.2d 663 (1985); *In re C.N.C.B.*, 197 N.C. App. 553, 678 S.E.2d 240 (2009); *In re J.C.*, 380 N.C. 738, 869 S.E.2d 682 (2022). However, in these cases, our State Supreme Court addressed whether excluding the standard of proof from the written order is *reversible error*—distinguished from our present case which considers whether the addition of the standard of proof is a *substantive modification* under a Rule 60(a) amendment.

In one such case, the Court held that "a trial court does not reversibly err by failing to explicitly state the statutorily-mandated standard of proof in the written termination order if . . . the trial court explicitly states the proper standard of proof in open court at the termination hearing." *In re B.L.H.* 376 N.C. at 120–21, 852

S.E.2d at 95 (2020). In another matter, the Court considered a scenario in which the trial court did not make an announcement either in its written order or in open court about the standard of proof that it applied to make findings of fact. *In re M.R.F.*, 378 N.C. at 643, 862 S.E.2d at 762 (2021). The Court held "[i]n light of not only the failure of the trial court to announce the standard of proof which it was applying to its findings of fact but also due to petitioner's failure to present sufficient evidence to support any of the alleged grounds for the termination of the parental rights of respondent-father, we are compelled to simply, *without remand*, reverse the trial court's order." *Id.* at 642–643, 862 S.E.2d 758, 762–763 (emphasis original). More recently, the Court determined that employing the wrong standard of proof requires a reviewing court to set aside a termination of parental rights order. *In re J.C.,* 380 N.C. at 744, 689 S.E.2d at 687 (2022). Though these cases address the insufficiency of orders and are not a factual analysis of a modification under Rule 60(a), they speak directly to the importance of the trial court memorializing its employment of the correct standard of proof during the proceedings in this context.

While case law highlights the significance of substantiating the use of the correct standard of proof, well-founded principles of statutory construction provide additional guidance. "The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (internal citation omitted). "It is well settled that where the language of a statute is clear and unambiguous, there is no room for judicial construction and the

courts must construe the statute using its plain meaning." *In re Estate of Lunsford*, 359 N.C. 382, 391–92, 610 S.E.2d 366, 372 (2005) (internal citation omitted). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (citation omitted). *Black's Law Dictionary* defines a "clerical error" as "an error resulting from a minor mistake or inadvertence. . . ." *Clerical error, Black's Law Dictionary* (7th ed. 2002). Such an error as the omission of the proper standard of proof can hardly fall within the realm of a clerical error or mistake.

In the matter presently before our Court, due to a malfunction of the electronic recording device, we are without an original transcript from the proceedings and left only with a "narrative of the proceedings," the Original Order, and the Amended Order. Thus, it is impossible for this Court to determine whether the trial court announced the correct standard of proof in open court. The timeline and sequence of events in this matter is also noteworthy. The adjudicatory hearing on termination was held on 16 February 2022 and the Order of Termination was entered on 25 February 2022. On 28 February 2022, Father filed his notice of appeal. It was not until 27 May 2022 that Mother filed a Rule 60(a) motion that highlighted the deficiencies in the Original Order. Then, on 9 June 2022, the trial court granted Mother's motion pursuant to Rule 60(a) and entered the Amended Order.

In the Original Order, a single reference of an imprecise, albeit acceptable articulation of the standard of proof is present in the findings of fact, which states there is "clear and convincing evidence that it is in the best interests of the minor child that the Father's parental rights be terminated." *See In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984) ("It is well established that 'clear and convincing' and 'clear, cogent, and convincing' describe the same evidentiary standard"). Still, a comparison of the Original and Amended Orders shows that the Original Order is deficient in that "[t]he burden in such proceedings shall be upon the petitioner or movant and all findings of fact shall be based on *clear, cogent, and convincing* evidence." N.C. Gen. Stat. § 7B-1109 (emphasis added). Here, in contrast to the Amended Order, the Original Order fails to assert the proper standard of proof for any findings beyond the "best interests of the minor child." Moreover, an application of available Rule 60(a) case law invites us to determine whether the additional language "alters the effect of the original order." *Buncombe Cnty ex rel. Andres v. Newburn*, 111 N.C. App. 822, 825, 433 S.E.2d 782, 784 (1993). The Original Order has no legal effect, while the Amended Order is legally sufficient to terminate parental rights. Absent proper employment of the appropriate standard of proof by the trial court in either the written Order or the record of the proceedings, any subsequent addition including this standard of proof was substantive and an abuse of discretion.

In addition to challenging the propriety of the Rule 60(a) motion, Father challenges the trial court's factual findings, as well as its conclusion that his abandonment of Adam was willful. We do not reach the merits of these particular arguments because we conclude the trial court's Order is invalid.

## IV. <u>Conclusion</u>

It is not lost on this Court that the differences between the two Orders are technical. Nonetheless, considering timeless legal principles and the fundamental rights at stake, we find the modifications were substantive rather than clerical in nature and divested the trial court of jurisdiction to make such changes pursuant to Rule 60(a). Accordingly, it was an abuse of discretion to grant Mother's Rule 60(a) motion to amend the Original Order terminating Father's rights. Therefore, we vacate the trial court's Amended Order terminating Father's parental rights and remand to apply the proper standard of proof. On remand, the trial court may consider additional evidence or hear further arguments if necessary.

VACATED AND REMANDED.

Judges HAMPSON and CARPENTER concur.